**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                  :

**PENTHOUSE MEDIA GROUP, INC.,**     :

                  :

   **Appellant/Third Party Plaintiff,**   :   <u>**OPINION AND ORDER**</u>

                  :

   **- against -**                :   **09 Civ. 85 (SAS)**

                  :

**PACHULSKI STANG ZIEHL & JONES LLP,** :

                  :

   **Appellee/Third Party Defendant.**  :

                  :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

          Third Party Plaintiff Penthouse Media Group, Inc. ("PMG") appeals

an Order of the United States Bankruptcy Court for the Southern District of New

York dated December 11, 2008 (the "Order"). In that Order, Chief Judge Stuart

M. Bernstein granted summary judgment in favor of Third Party Defendant

Pachulski Stang Ziehl & Jones LLP ("Pachulski") and dismissed PMG's

complaint for professional malpractice. For the following reasons, the Order of

the bankruptcy court is reversed.

**I.     BACKGROUND**[1]

     **A.    The Bankruptcy Plan**

---

[1]     The following facts are undisputed.

1

In August 2003 – in a case titled *In re General Media, Inc.* – PMG's predecessors-in-interest, General Media, Inc. and various affiliates (together, "the Debtor"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2]  In September 2003, Pachulski was retained by the Debtor to assist in the formulation of their Chapter 11 Bankruptcy Plan.[3]  In August 2004, the Fourth Amended Plan of Reorganization (the "Plan") was completed and confirmed.[4]  According to Section 7.1.1 of the Plan, notice of the general rejection bar date ("Rejection Claims Bar Date") – which should have been applicable to then-employee Jane Homlish Krynicki's employment contract – was to have been served on each party to an executory contract.[5]  In October 2004, PMG was still unaware that Pachulski had failed to serve the requisite notice on Krynicki and establish a bar date for claims related to the terminations of Debtor's rejected

---

[2]     *See* 8/12/03 General Media, Inc. Voluntary Petition, Ex. 1 to 10/17/08 Declaration of Jung H. Park in Support of Pachulski's Motion for Summary Judgment ("Park Decl.").

[3]     *See* 9/17/03 Order Authorizing the Employment and Retention of Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C. as Counsel for the Debtors and Debtors in Possession, Ex. 2 to Park Decl.

[4]     *See* 8/13/04 Order Confirming Debtors' Fourth Amended Joint Plan of Reorganization, Ex. 5 to Park Decl.

[5]     *See id.* ¶ 15 (directing Debtors to serve the notice of the rejection claims bar date on those parties whose contracts would be rejected pursuant to Section 7.1.1 of the Plan and Schedule 7.1(B)).

severance plans pursuant to Section 7.3 of the Plan.[6]

## B.    Pachulski's Final Fee Application

In early October 2004, PMG terminated Krynicki's employment.[7]

Later that same month, Krynicki's lawyer contacted PMG and demanded payment

of severance.[8]

On October 22, Pachulski served and filed its final fee application for

services rendered to the Debtor.[9]  On November 30, Judge Bernstein held a

---

[6]     *See* Debtors' Fourth Amended Plan Supplement, Schedule 7.1(B), Ex. 4 to
Park Decl. (failing to list the Krynicki contract as a rejected executory contract);
8/20/04 Affidavit of Service of Denise Harris, Ex. 7 to Park Decl. (failing to list
Krynicki as a person to whom notice was given); Debtors' Fourth Amended Joint
Reorganization Plan, Ex. 3 to Park Decl. (noting that section 7.3 of the Plan –
which applies to severance contracts other than those covered by Section 7.1.1 –
does not set a rejection bar date); 3/8/06 Letter from Pachulski to PMG ("3/8/06
Letter"), Ex. 5 to 11/3/08 Declaration of Ronald M. Terenzi, a member of
Berkman, Henoch, Peterson & Peddy (the "Berkman firm") and counsel to PMG
("Terenzi Decl.") (erroneously confirming that notice had been sent to Krynicki);
10/25/06 Letter from Terenzi ("10/25/06 Letter"), Ex. 6 to Terenzi Decl.
(erroneously informing Judge Bernstein that Krynicki had been provided adequate
notice in accordance with the Plan); 1/25/07 Bankruptcy Court Conference
Transcript at 9:1-7, Ex. 7 to Terenzi Decl. (same).

[7]     *See* Amended Complaint, *Krynicki v. PMG*, 05-3658 ("Krynicki Am.
Compl.") ¶ 17; 10/28/04 Letter from Arnold N. Bressler, Krynicki's counsel
("Demand Letter"), Ex. 13 to Park Decl.

[8]     *See* Demand Letter. Not surprisingly, the letter did not disclose PMG's
failure to notify Krynicki of a general rejection bar date or that the Plan did not
establish a severance plan rejection bar date. *See id.*

[9]     *See* 10/22/04 Pachulski Fee Application, Ex. 9 to Park Decl.

hearing on Pachulski's fee application.[10] PMG did not oppose the application, and

it was approved by the bankruptcy court on that day.[11] Pachulski continued to

serve as PMG's lawyer in the winding down of the bankruptcy proceeding until

September 2005 when it withdrew as counsel to PMG.[12] PMG had also retained

the Berkman firm for assistance in its bankruptcy proceedings and other matters.[13]

## C.    Krynicki's Lawsuit and PMG's Third Party Complaint

On February 2, 2005, Krynicki filed her Complaint against PMG and

others seeking severance benefits.[14] After the Complaint was filed, PMG

repeatedly received assurances from Pachulski that Krynicki had been properly

---

[10]    *See* 11/30/04 Order Granting Applications for Final Allowance of
Compensation and Reimbursement of Expenses, Ex. 15 to Park Decl.

[11]    *See id.*; Statement of Undisputed Material Facts in Support of Pachulski's
Motion for Summary Judgment ("Pachulski Stmt. Undisputed Facts") ¶ 18;
Counter-statement of Undisputed Material Facts of PMG in Opposition to
Pachulski's Motion for Summary Judgment ("PMG Counter. Undisputed Facts") ¶
18.

[12]    *See* 9/1/05 Withdrawal Letter from Pachulski to PMG ("Withdrawal
Letter"), Ex. 3 to Terenzi Decl.

[13]    *See* Pachulski Stmt. Undisputed Facts ¶ 17; PMG Counter. Undisputed
Facts ¶ 17. Although it is unclear when PMG formally retained the Berkman firm,
it appears that the firm may have been representing PMG as early as October
2004, when the firm filed a number of monthly operating statements in the
bankruptcy court on behalf of the "reorganized debtor." *See* Docket, *In re General
Media*, 03 Civ. 15078 (Bankr. S.D.N.Y.).

[14]    *See In re General Media*, 368 B.R. 334 (Bankr. S.D.N.Y. 2007).

4

served with notice.[15]  Krynicki filed an Amended Complaint on February 6, 2007,

asserting, inter alia, a claim for breach of contract.[16]  On defendants' motion to

dismiss, Judge Bernstein held that Krynicki had adequately stated a claim for

breach of her employment agreement, noting that neither the Rejection Claims Bar

Date nor any other bar date applied to Krynicki's severance pay claim.[17]

On July 9, 2007, PMG filed a third-party complaint to implead

Pachulski.[18]  PMG alleged three causes of action: (1) negligence, (2) breach of

fiduciary duty, and (3) professional malpractice.[19]  The court subsequently

dismissed the negligence and breach of fiduciary duty claims, leaving the

malpractice claim in contention.[20]

## D.    PMG's Third Party Complaint

On October 20, 2008, Pachulski filed a motion for summary

judgment, arguing that PMG's malpractice claim is barred by the doctrines of res

---

[15]    *See, e.g.*, 3/8/06 Letter.

[16]    *See* Krynicki Am. Compl.

[17]    *See In re General Media*, 368 B.R. at 342.

[18]    *See* Third Party Complaint Against Pachulski.

[19]    *See id.*

[20]    *See* 11/29/07 Order with Respect to Motion of Pachulski to Dismiss Third Party Complaint.

judicata and collateral estoppel based on the bankruptcy court's prior approval of its final fee application.[21]   On December 11, 2008, the bankruptcy court granted summary judgment in favor of Pachulski.[22]

In the December 11, 2008 Order, Judge Bernstein ruled that res judicata applied to bar PMG's malpractice claim.[23]   In so doing, the bankruptcy court relied heavily on the Western District of New York decision in *D.A. Elia Construction Corp. v. Damon & Morui, LLP*.[24]   Judge Bernstein held that the court's approval of the fee application was a final order, that the bankruptcy court had jurisdiction to issue such approval, and that PMG and Pachulski were identical to the parties in the previous proceeding because PMG was a party-in-interest to the fee application.[25]   He also ruled that the causes of action were the same because both the fee application and the malpractice claim "'require a finding as to the nature and the quality of the professional services, and thus, the

---

[21]   *See* Third Party Defendant Pachulski's Motion for Summary Judgment.

[22]   *See* 12/9/08 Order Granting Third Party Defendant Pachulski's Motion for Summary Judgment.

[23]   *See* Transcript of Chapter 11 Hearing re: Motion for Summary Judgment ("Summ. Judg. Tr.") at 28:16-20.

[24]   389 B.R. 314 (W.D.N.Y. 2008). *See also* Summ. Judg. Tr. at 25:14-26:2.

[25]   *See* Summ. Judg. Tr. at 26:2-10.

6

core of operative facts or central factual question is the same.'"[26]  Key to the

decision was the bankruptcy court's finding that PMG "should have known of the

facts [giving] rise to the malpractice claim" by the time of the fee application

hearing.[27]  PMG now appeals the grant of summary judgment to Pachulski.

## II.   LEGAL STANDARD

### A.   Bankruptcy Appeals

District courts are vested with appellate jurisdiction over bankruptcy

courts.[28]  Final orders of the bankruptcy court may be appealed to the district court

as of right.[29]  An order is final if "'[n]othing in the order . . . indicates any

anticipation that the decision will be reconsidered.'"[30] A grant of summary

judgment is reviewed de novo by the appellate court.[31]

---

[26]    *Id.* at 26:12-15 (quoting *In re Image Innovations Holdings, Inc.*, 391 B.R.
255, 261 (Bankr. S.D.N.Y. 2008)).

[27]    *Id.* at 27:9-13.

[28]    *See* 28 U.S.C. § 158(a).

[29]    *See id.* § 158(a)(1).

[30]    *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) (quoting *In re Palm
Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 256 (2d Cir. 1996)).

[31]    *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.
2009). *See also In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001) ("[W]e review de
novo whether, viewing the record in the light most favorable to the non-movant, []
any genuine and disputed issue of material fact underlies the bankruptcy court's
decision.") (citing *In re Blackwood Assocs.*, 153 F.3d 61, 67 (2d Cir. 1998)).

7

## B.    Res Judicata

"A fundamental precept of common-law adjudication, embodied in

the related doctrines of collateral estoppel and res judicata, is that a 'right,

question or fact distinctly put in issue and directly determined by a court of

competent jurisdiction . . . cannot be disputed in a subsequent suit between the

same parties or their privies . . . .'"[32] "By 'preclud[ing] parties from contesting

matters that they have had a full and fair opportunity to litigate,' these two

doctrines protect against 'the expense and vexation attending multiple lawsuits,

conserv[e] judicial resources, and foste[r] reliance on judicial action by

minimizing the possibility of inconsistent decisions.'"[33]

> The New York Court of Appeals has explained
>
>> "A determination whether the first action or proceeding
>> genuinely provided a full and fair opportunity requires
>> consideration of the realities of the [prior] litigation,
>> including the context and other circumstances which . . .
>> may have had the practical effect of discouraging or
>> deterring a party from fully litigating the determination
>> which is now asserted against him."[34]

---

[32]    *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

[33]    *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (quoting *Montana*, 440 U.S. at 153-54).

[34]    *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir. 1998) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).

"Included among the factors to be considered are 'the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, [and] the competence and expertise of counsel.'"[35]

"To determine whether the doctrine of res judicata bars a subsequent action, [courts] consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same."[36] "In the bankruptcy context, [courts] ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan."[37]

Two actions are the same when they "involve the same claim or nucleus of operative fact."[38] "'To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and

---

[35]   *Id.* (quoting *Ryan*, 62 N.Y.2d at 501).

[36]   *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (quoting *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997)).

[37]   *Id.* (quoting *Corbett*, 124 F.3d at 88).

[38]   *Id.* (internal quotations omitted).

whether their treatment as a unit conforms to the parties' expectations . . . ."[39]

Even when all of the elements of res judicata are satisfied, a
malpractice claim remains viable unless a party "could and should have brought
[it] in the former proceeding."[40] "In this context, important factors in this analysis
include whether the fee hearing was an adversary proceeding or contested matter,
the nexus between the order awarding [] fees and the claims now being asserted,
and 'the amount of time that has elapsed since the case commenced.'"[41] Such a
determination depends on "whether and to what extent [the party] had actual or
imputed awareness prior to the fee hearing of a real potential for claims . . . and
whether the bankruptcy court possesse[s] the procedural mechanisms that . . .

---

[39]     *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)
(quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)
(internal quotations omitted)).

[40]     *In re Intelogic Trace, Inc.*, 200 F.3d 382, 388 (5th Cir. 2000). *Accord EDP
Med. Computer Sys., Inc. v. United States*, 480 F.3d 621 (2d Cir. 2007) ("Under
the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits
of an action precludes the parties or their privies from relitigating issues that were
or *could have been* raised in that action.'") (quoting *St. Pierre v. Dyer*, 208 F.3d
394, 399 (2d Cir. 2000) (emphasis added)); *Sure-Snap Corp. v. State Street Bank
& Trust Co.*, 948 F.2d 869, 875 (2d Cir. 1991) (finding that a claim for tortious
infliction of emotional distress against creditors should have been brought as part
of a prior bankruptcy proceeding and was therefore barred by res judicata).

[41]     *In re Intelogic*, 200 F.3d at 388 (quoting *Matter of Howe*, 913 F.2d 1138,
1147 n.28 (5th Cir. 1990)).

10

allow[ the party] to assert such claims."[42]

## IV.   DISCUSSION

Pachulski continued to represent PMG until September 1, 2005 when

Pachulski resigned as PMG's counsel.  PMG now argues that this critical fact

precludes summary judgment on res judicata grounds for two distinct reasons.

*First*, it raises an issue of material fact with respect to whether PMG had a full and

fair opportunity to raise the malpractice claim, considering that PMG had "no

reason to believe that the attorneys seeking a fee had committed malpractice."[43]

*Second*, it raises an issue of material fact with respect to whether PMG "should

have known" about the malpractice claims at the time of the fee hearing because

PMG had no reason to doubt both Pachulski's repeated assurances that it had

---

[42]    *Id.*

[43]    Brief of PMG in Opposition to Pachulski's Motion for Summary Judgment
("PMG Mem.") at 12.  Pachulski argues that PMG may not raise this issue for the
first time on appeal.  *See* Respondent Brief of Appellee/Third Party Defendant
Pachulski Stang Ziehl & Jones, LLP ("Pachulski Mem.") at 19.  However PMG
notes – and I agree – that this fact was squarely before the bankruptcy court.  *See*
PMG Counter. Undisputed Facts ¶ 45 ("It was not until September 1, 2005, nearly
a year after the Fee Application and the demand by Krynicki for severance, that
the Pachulski firm withdrew as counsel of record for the Reorganized Debtors.");
Summ. Judg. Tr. at 21:17 ("We were working with Pachulski at the time.").
Because PMG argued that it did not know and had no reason to know of the
potential malpractice claim at the time of the fee hearing, the bankruptcy court
should have considered the undisputed fact that Pachulski continued to represent
PMG at the time of the fee application in its analysis.

properly performed its services and its representations that Krynicki's claims were baseless.[44] I agree.

## A.    Full and Fair Opportunity

Although Pachulski's fee application was approved by the bankruptcy court in the prior proceeding, I cannot conclude as a matter of law that PMG had a full and fair opportunity to litigate allegations of Pachulski's malpractice during that hearing. Many of the factors used to consider whether a party had a full and fair opportunity to litigate an issue favor PMG, particularly given PMG's continued retention of Pachulski as its counsel. For instance, one of the factors courts have considered is "the importance of the claim in the prior litigation."[45] PMG had just undergone a reorganization with the help of Pachulski as its counsel. The possibility that Pachulski may have committed malpractice while

---

[44]    *See* Reply Brief of PMG in Opposition to Pachulski's Motion for Summary Judgment (" PMG Rep. Mem.") at 10. Pachulski notes that PMG was represented by the Berkman firm at the time of the fee application hearing and thereafter and that Pachulski only remained as PMG's counsel in connection with "discrete" matters after the Plan went into effect on October 5, 2004. Pachulski Mem. at 20. It therefore argues that "[f]or all intents and purposes, after the Plan went effective and PMG[] had emerged as the reorganized debtor, the Pachulski Firm ceased to be PMG[]'s attorney . . . ." *Id.* This argument is both disingenuous and unpersuasive. Just because PMG had retained a second law firm does not change the fact that Pachulski continued to advise PMG and that PMG was entitled to place its trust in Pachulski.

[45]    *Ryan*, 62 N.Y.2d at 501.

12

representing PMG during that reorganization may not have been at the forefront of

PMG's concerns. In addition, PMG had no "incentive [or] initiative to litigate"

the malpractice issue,[46] considering that it expected Pachulski to continue to

advise PMG in the winding down of its bankruptcy proceeding.[47]

        Pachulski presents a number of cases in support of its argument that

res judicata bars a subsequent malpractice suit against a professional when the fee

application for that professional was previously considered and approved by a

court.[48]  However, in each of these cases, at the time of the fee application the

relationship between the professional and client had either already been terminated

or had deteriorated based on the client's dissatisfaction with that professional's

---

[46]    *Id.*

[47]    *See Schweizer v. Mulvehill*, 93 F. Supp. 2d 376 (S.D.N.Y. 2000) ("Although the reasonableness of the fee was thus an issue [that had been] decided [], we cannot conclude as a matter of law that that determination should be binding on this court . . . . In this case, the decision invoked for purposes of applying collateral estoppel was made while plaintiff was represented by defendants, the very parties he now accuses of a breach of trust, misrepresentation and fraudulent omissions.").

[48]    *See* Pachulski Mem. at 11 (citing *In re Image Innovations Holdings*, 391 B.R. at 261; *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003); *In re Iannochino*, 242 F.3d 36, 37 (1st Cir. 2001); *In re Intelogic*, 200 F.3d at 386-87; *In re D.A. Elia Constr. Corp.*, 389 B.R. at 319-20).

13

service.[49]  Neither situation is present here.

Of particular importance to this Court is the bankruptcy court's

reliance on *D.A. Elia Construction Corp.*[50]  Judge Bernstein concluded that *D.A.*

*Elia* was directly on point,[51] but *D.A. Elia* is perhaps even more clearly

distinguishable from the instant case than other cases cited by Pachulski, as in that

case the malpractice claim was actually litigated during the fee application

proceeding.  *D.A. Elia* emphasized that

> many of the same allegations made by Elia in its
> [malpractice] complaint were previously made by Elia in
> its objections to Damon & Morey's final fee application.

---

[49]     *See In re Iannochino*, 242 F.3d at 49 (noting that the Iannochinos'
"relationship with their attorney had broken down" and that "[i]n each instance [of
malpractice], the advice the Iannochinos now claim was improper resulted in
almost immediate negative results"); *Grausz*, 321 F.3d at 474 (noting that at the
time of the fee application hearing, "the Linowes [law] firm had withdrawn as
Grausz's bankruptcy counsel due to his dissatisfaction with the firm's services");
*In re Image Innovations*, 391 B.R. at 258 (after fee application was approved,
barring a subsequent malpractice suit from proceeding against a liquidation agent
and auctioneer for disappointing auction proceeds that were approximately ten
percent of the inventory's estimated cost value); *In re Intelogic*, 200 F.3d at 385-
86 (noting in particular an internal memo – drafted by a board member prior to
Ernst & Young's fee hearing – that complained of flaws in Ernst & Young's
preparation of cash flow projections).

[50]     *See* Summ. Judg. Tr. at 25:14-16.

[51]     *See id.* at 25:14-26:25 (finding that its fee order for Pachulski was a final
judgment on the merits, that the litigants were the same parties because PMG – as
the Debtor's successor – had been a party-in-interest to the fee application, and
that the causes of action are the same).

14

> Specifically, Elia argued to the bankruptcy court that the firm had labored under a conflict of interest, had committed legal malpractice and had failed to turn over money owed to the estate. The bankruptcy court provided Elia with ample opportunity [to] raise those claims, but ultimately rejected them as meritless.[52]

The district court concluded that "it cannot be said that Elia was denied the opportunity to raise these [malpractice] claims in the prior action."[53] In the instant case, PMG raised no such objections at the fee hearing.[54]

It would be unreasonable to require a party to bring a malpractice claim against attorneys who still represent that party. Indeed, under the continuous representation doctrine, the statute of limitations on professional malpractice claims are tolled while a malpractice plaintiff maintains an ongoing relationship with his attorney, as "the client has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered . . . ."[55] At best, the question of whether PMG had a full and fair

---

[52]    *D.A. Elia*, 389 B.R. at 319.

[53]    *Id.* at 320.

[54]    *See* Pachulski Stmt. Undisputed Facts ¶ 18; PMG Counter. Undisputed Facts ¶ 18.

[55]    *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 373 (S.D.N.Y. 2005).

opportunity to litigate its malpractice claim in the previous proceeding is an issue of material fact that cannot be resolved on summary judgment.

## B.      PMG's Awareness of Its Malpractice Claim

In addition to failing to consider whether the continued representation of PMG by Pachulski made it impossible for PMG to have had a full and fair opportunity to litigate its claim, the bankruptcy court also erred in concluding as a matter of law that PMG "had the facts [giving rise to its malpractice claim] at its fingertips and the motive to investigate them."[56]  Judge Bernstein found significant that Krynicki had demanded over $320,000 in severance pay on October 28, 2004, which was six days after Pachulski filed its fee application and a month before the hearing.[57]  He noted that had PMG begun an investigation into whether Krynicki had filed a proof of claim, it would have learned that Pachulski had failed to serve the requisite notice on Krynicki and that the firm had also failed to establish a bar date for claims related to the terminations of PMG's rejected severance plans.[58]

However, a demand by a former – and likely disgruntled – employee for severance pay would not necessarily have put PMG on notice that Pachulski

---

[56]     Summ. Judg. Tr. at 27:14-15.

[57]     *See id.* at 27:15-18.

[58]     *See id.* at 27:19-28:2.

had failed to properly execute the plan.  Krynicki's demand letter did not apprise PMG that Krynicki had not been provided notice of a general rejection bar date.[59] While it would have been prudent for PMG to have begun an investigation of Krynicki's claim, I cannot conclude as a matter of law that PMG should have conducted one.  The impetus to do so was severely weakened by Pachulski's continued representation of PMG.  In addition, PMG notes that Pachulski "repeatedly argued" that it had provided Krynicki proper notice of the claim deadline, even as late as 2006.[60]  There is at least a genuine issue of material fact as to whether PMG should have known about a potential malpractice claim against Pachulski despite continued assurances from Pachulski that Krynicki's claim was unfounded.

Pachulski argues – and Judge Bernstein apparently agreed – that "just because PMG[] did not understand the significance of the facts it now claims amount to malpractice, does not excuse PMG[] from opposing the fee application when those facts constituting the purported malpractice were known or should have been known at the time."[61]  In support of this argument, Pachulski cites to the

---

[59]   *See* Demand Letter.

[60]   *See* PMG Rep. Mem. at 10; 3/8/06 Letter.

[61]   Pachulski Mem. at 12.

Fifth Circuit's decision in *In re Intelogic Trace*.[62]

　　　*In re Intelogic Trace* is again distinguishable from the instant case.  In that case the debtor – Interlogic Trace ("IT") – brought a malpractice suit against its accountant, Ernst & Young ("E&Y"), for failing to properly perform its accounting services in connection with its bankruptcy plan.  Evidence showed that a board member of IT had sent an internal memorandum expressing concerns about the competency of the services provided by E&Y prior to the hearing.[63] Nevertheless, IT ultimately decided to use concerns over the quality of professional services to negotiate lower fees with E&Y in return for its unqualified support of E&Y's fee application.[64]  The Fifth Circuit held that IT's malpractice claim was barred by res judicata, but the Court found particularly significant

> the Board's general awareness of the background facts underlying the present claims before the fee hearing, the Board's having realized the real possibility of a link between its flawed numbers and [E&Y's] services, [and] the Board's deliberate choice not to voice its concerns regarding the quality of services at the fee hearing . . . .[65]

　　　Although PMG had a "general awareness of the background facts"

---

[62]　　*See id.*

[63]　　*See* 200 F.3d at 384-85.

[64]　　*See id.* at 385.

[65]　　*Id.* at 391.

18

underlying its malpractice claim,[66] there is no evidence that PMG made a "link"

between Krynicki's demand for severance and a potential malpractice claim

against Pachulski until six months after the fee hearing, when Krynicki first raised

the issue of notice.[67]  Even then, when PMG sent a letter to Pachulski to raise these

concerns, Pachulski responded with an assurance that Krynicki had indeed been

served with adequate notice.[68]  It was not until two and a half years later that Judge

Bernstein discovered Pachulski's failure to notify Krynicki of the bar date after a

detailed investigation of the Plan provisions and upon considering PMG's motion

to dismiss Krynicki's claims.[69]  Furthermore, far from affirmatively deciding not to

challenge Pachulski's fee application, PMG had no reason to suspect that

Pachulski's work was inadequate and in fact made no objection to the fee

application and continued to retain Pachulski as its advisor until a year after the

fee hearing.  I must therefore disagree with the bankruptcy court's conclusion that

it could decide – as a matter of law – that PMG should have known of its

---

[66]     Summ. Judg. Tr. at 11:7-14 (PMG conceding that it could have discovered its claim against Pachulski prior to the fee application hearing had it reviewed the plan documents).

[67]     *See* PMG's Opposition to Pachulski's Motion for Summary Judgment Before Judge Bernstein at 6.

[68]     *See* 3/8/06 Letter.

[69]     *See* Summ. Judg. Tr. at 11:15-23.

malpractice claim in October 2004.[70]

## V.   CONCLUSION

For the reasons discussed above, the bankruptcy court's Order

granting Pachulski's motion for summary judgment is reversed.  This case shall be

remanded to the United States Bankruptcy Court for the Southern District of New

York for actions consistent with this opinion.  The Clerk of the Court is directed to

close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 2, 2009

---

[70]    Because I find that PMG has raised a genuine issue of material fact with respect to whether it had a full and fair opportunity to litigate the malpractice issue and whether it should have known of the malpractice claim at the time of the fee hearing, I do not consider PMG's third argument on appeal: that PMG had not sustained actual damages at the time of the fee hearing and therefore could not have raised the malpractice issue at that time. *See* PMG Mem. at 16.

## - Appearances -

**For PMG:**

Philippe A. Zimmerman, Esq.
Moses & Singer LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-1299
(212) 554-7400

**For Pachulski:**

Andrew L. Margulis, Esq.
Jung H. Park, Esq.
Ropers, Majeski, Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
(212) 668-5927